# EXHIBIT A

SEALED PROCEEDINGS - PURSUANT TO COURT ORDER

1

1   IN THE UNITED STATES DISTRICT COURT
    FOR THE NORTHERN DISTRICT OF ILLINOIS
2   EASTERN DIVISION

3
    UNITED STATES OF AMERICA,            )
4                                        )
                     Plaintiff,          )
5                                        )
    -vs-                                 )
6                                        )   Case No. 09 CR 383-10
    PEDRO FLORES,                        )
7                                        )   Chicago, Illinois
                     Defendant.          )   August 22, 2012
8                                        )   11:03 a.m.
                                         )
9
                    TRANSCRIPT OF PROCEEDINGS
10   BEFORE THE HONORABLE CHIEF JUDGE RUBEN CASTILLO

11   APPEARANCES:

12   For the Plaintiff:      MR. THOMAS D. SHAKESHAFT
                             Assistant U.S. Attorney
13                           219 S. Dearborn Street
                             Chicago, IL  60604
14                           (312) 353-5300

15
     For the Defendant:
16

17

18

19

20

21   Court Reporter:

22                  KATHLEEN M. FENNELL, CSR, RPR, RMR, FCRR
                         Official Court Reporter
23                    United States District Court
                  219 South Dearborn Street, Suite 2524-A
24                     Chicago, Illinois  60604
                    Telephone:  (312) 435-5569
25                Kathleen_Fennell@ilnd.uscourts.gov

SEALED PROCEEDINGS - PURSUANT TO COURT ORDER

2

1          (Proceedings heard in open court:)

2          THE CLERK:  09 CR 383, United States versus Pedro

3    Flores.

4          THE COURT:  Good morning.

5          MR. SHAKESHAFT:  Good morning, your Honor.  Tom

6    Shakeshaft on behalf of the United States.

7          Your Honor, before we get started --

8          THE COURT:  Sure.

9          MR. SHAKESHAFT:  -- I'd like to raise a couple of

10   issues with your Honor --

11         THE COURT:  Okay.

12         MR. SHAKESHAFT:  -- even before counsel says

13   anything.

14         THE COURT:  Okay.

15         MR. SHAKESHAFT:  In conversations with counsel, he

16   has requested, and the government does not oppose, two things

17   that we wanted to run by your Honor.

18         THE COURT:  Okay.

19         MR. SHAKESHAFT:  One is it's my understanding that

20   counsel would like to file his appearance in this case under

21   seal.

22         THE COURT:  Okay.

23         MR. SHAKESHAFT:  For personal security reasons

24   related to his representation of this defendant.

25         THE COURT:  Okay.

SEALED PROCEEDINGS - PURSUANT TO COURT ORDER

3

1    MR. SHAKESHAFT:  So -- and in that regard, we would
2  ask that this entire proceeding be under seal.
3    THE COURT:  Okay.
4    MR. SHAKESHAFT:  The second issue, and I think we've
5  come up with a way to handle it, is --
6    THE COURT:  So as to just those two, I will do that.
7  I'll let you, ███████, file your appearance under seal, and
8  I will seal the transcript of this proceeding.
9    You have to understand that with regard to the
10  transcript of this proceeding, I fully expect the defendants
11  that do proceed to trial may at one day request that
12  transcript.
13    ███████:  Judge, I'm aware of that and I'm
14  prepared for that --
15    THE COURT:  Okay.
16    ███████:  -- but there's been some issues that
17  have popped up over the course of time that, you know --
18    THE COURT:  Okay.
19    ███████:  -- if it was just me individually, I
20  signed up for the gig, so there's no point in me complaining
21  about it, but the people around me did not, so --
22    THE COURT:  Okay.  I'll seal the transcript.
23    MR. SHAKESHAFT:  The second issue, I'm sorry, your
24  Honor, relates to the same topic.  The plea agreement that we
25  expect to tender to your Honor, respecting your Honor's

11:03:55  (line 5)
11:04:12  (line 10)
11:04:33  (line 20)
1:04:46  (line 25)

1  allowing ▮▮▮▮▮ to do so, what we would propose doing is

2  tendering the plea agreement today and having the actual

3  signed version be under seal.

4        THE COURT:  Okay.

11:05:02  5        MR. SHAKESHAFT:  We will then submit to your

6  courtroom deputy a redacted version of the plea agreement that

7  extracts or redacts all personally identifying information as

8  to the counsel, and that one could be made public because we

9  do think that the public has an interest in what occurred

11:05:19  10  today.

11        THE COURT:  Okay.

12        MR. SHAKESHAFT:  We can do that next week once today

13  and tomorrow's proceedings are concluded at the behest of the

14  U.S. Marshals.

11:05:26  15        THE COURT:  That's fine.  I'll allow that.

16        MR. SHAKESHAFT:  We agree.  We expect that at some

17  point, we'll have to tender these to the other defendants, and

18  we'll probably tender the redacted versions to those.  If they

19  want to litigate those redactions, we can deal with those in

11:05:41  20  due course.

21        THE COURT:  That's fine.

22        MR. SHAKESHAFT:  So with those preliminary issues

23  addressed, your Honor, we are here both for an arraignment and

24  a change of plea.  This defendant has not been arraigned on

1:05:50  25  the third superseding indictment, so I'll tender to your Honor

SEALED PROCEEDINGS - PURSUANT TO COURT ORDER

5

1    a copy of the third superseding indictment in this case as

2    well as the executed copy of the plea agreement.

3              THE COURT:  Okay.

4              MR. SHAKESHAFT:  I hope your Honor got -- we

11:06:01  5    submitted a draft.

6              THE COURT:  Yes, I do have it, and that was going to

7    be one of my questions.

8              MR. SHAKESHAFT:  It is unchanged.

9              THE COURT:  I take it the draft is --

11:06:08  10              MR. SHAKESHAFT:  Unchanged.

11              THE COURT:  -- unchanged.

12              MR. SHAKESHAFT:  With the exception of its execution.

13              THE COURT:  Okay.

14              Very well.  And the plea agreement is signed.

11:06:19  15              Mr. Flores, it's my understanding that today being

16    your arraignment for the third superseding indictment, you

17    intend to proceed by way of a written plea agreement.

18              I take it,         , you waive formal reading of

19    this third superseding indictment?

11:06:38  20              :  I will, your Honor.

21              THE COURT:  And then we will proceed pursuant to the

22    written plea agreement?

23              :  Yes, your Honor.

24              THE COURT:  Which then, Mr. Flores, what you're going

1:06:48  25    to do pursuant to the written plea agreement, which

SEALED PROCEEDINGS - PURSUANT TO COURT ORDER

6

1   has negotiated on your behalf with the government, is enter a

2   voluntary plea to Count 1 of the superseding indictment which

3   charges you with conspiring to knowingly and intentionally

4   possess with intent to distribute controlled substances,

5   namely, five kilograms or more of mixtures containing a

6   detectable amount of cocaine.

7           Now, before I can accept your written plea, I need to

8   make a number of determinations here in open court.  I need to

9   determine that you're competent to plead at this time; that

10  you've had the assistance of counsel; that you understand your

11  trial rights which you will be waiving if you plead guilty

12  here this morning; that you understand not only the charge

13  that you're pleading guilty to but also the penalties that

14  could apply to that charge; that your plea is voluntary; and,

15  finally, that there is a factual basis for your plea, that is,

16  that you did some things that violated federal law.

17          In order for me to make all these determinations, I

18  need to place you under oath and ask you questions about this

19  matter; but before I do that, I want you to understand that if

20  at any point you have any question, you're free, Mr. Flores,

21  to ask me any question you might have or, in the alternative,

22  you can ask me to stop these proceedings so that you can speak

23  privately to your attorney, ███████████.

24          Second, I need to warn you that any false answers to

25  questions that I pose to you once you're under oath could

Case: 1:09-cr-00383 Document #: 615 Filed: 07/23/18 Page 8 of 33 PageID #:4741
SEALED PROCEEDINGS - PURSUANT TO COURT ORDER

7

1    subject you to additional charges for what are known as the

2    crimes of perjury or false statement and could also needlessly

3    aggravate your sentence, so that's something I would not

4    suggest that you do.

11:08:54    5         And, finally, in giving truthful answers to my

6    questions, especially when I ask you about the facts of this

7    case, you're going to be waiving your right not to testify

8    against yourself, and some of your answers may be

9    incriminating, and certainly you'll have to admit your guilt

11:09:08    10    here in open court before I could ever accept your plea.

11         Now, do you understand what I've told you so far?

12         THE DEFENDANT:  Yes, I do, your Honor.

13         THE COURT:  Okay.  Then we'll place you under oath.

14    (Defendant sworn.)

11:09:26    15    MR. SHAKESHAFT:  Your Honor, if I could just

16    interject one thing.

17         THE COURT:  Sure.

18         MR. SHAKESHAFT:  I would also note for your Honor

19    that pursuant to this plea agreement, there is also a Rule 20

11:09:34    20    transfer of another prosecution from the Eastern District of

21    Wisconsin.

22         THE COURT:  Okay.

23         MR. SHAKESHAFT:  So I think you can adopt everything

24    we've just done.

25         THE COURT:  Okay.

SEALED PROCEEDINGS - PURSUANT TO COURT ORDER

8

1     MR. SHAKESHAFT:  It applies to that, and the factual

2  basis and the plea in this case will also relate to that case.

3  It's reflected in the plea agreement.  Just so the record is

4  clear, this is --

11:09:49   5     THE COURT:  Just so the record is clear that this

6  will apply not only to this third superseding indictment but

7  also the Rule 20 case that was transferred to me from the

8  district in Michigan.

9     MR. SHAKESHAFT:  Wisconsin, your Honor.

11:10:01   10     THE COURT:  In Wisconsin.  Okay.

11     MR. SHAKESHAFT:  Thank you, your Honor.

12     THE COURT:  That was, what, the Western --

13     MR. SHAKESHAFT:  Eastern District of Wisconsin,

14  Milwaukee.

11:10:08   15     THE COURT:  Eastern District of Wisconsin, so

16  Milwaukee.

17     MR. SHAKESHAFT:  Yes.

18     THE COURT:  Okay.

19     Now, Mr. Flores, how far did you go in school?

11:10:16   20     THE DEFENDANT:  I got a high school diploma, your

21  Honor.

22     THE COURT:  Okay.  What kind of work have you done

23  since your education was finished?

24     THE DEFENDANT:  I had small jobs, worked at

1:10:31   25  McDonald's, Oil Express.

SEALED PROCEEDINGS - PURSUANT TO COURT ORDER

9

1      THE COURT:  Okay.

2      THE DEFENDANT:  Things like that.

3      THE COURT:  Are you in good physical health, sir?

4      THE DEFENDANT:  Yes, your Honor.

11:10:35   5      THE COURT:  Have you taken any type of medications

6  within the last 24 hours?

7      THE DEFENDANT:  No, your Honor.

8      THE COURT:  Have you taken any drugs or alcoholic

9  beverages within the last 24 hours?

11:10:45   10      THE DEFENDANT:  No, your Honor.

11      THE COURT:  Have you ever, Mr. Flores, been under the

12  care of a doctor or in a hospital for the treatment of a

13  mental condition?

14      THE DEFENDANT:  No, your Honor.

11:10:55   15      THE COURT:  ▮▮▮▮▮▮▮, given your representation of

16  Mr. Flores, do you have any doubt as to his competence?

17      ▮▮▮▮▮▮:  No, your Honor.

18      THE COURT:  And has the government's investigation

19  cast any doubt on Mr. Flores's competence, Mr. Shakeshaft?

11:11:13   20      MR. SHAKESHAFT:  It has not, your Honor.

21      THE COURT:  Okay.

22      Then the Court finds that Mr. Flores is fully

23  competent to proceed with a change of plea.

24      Now, Mr. Flores, have you had enough time to speak to

1:11:23   25  your attorney, ▮▮▮▮▮▮, about this matter?

SEALED PROCEEDINGS - PURSUANT TO COURT ORDER

10

1      THE DEFENDANT:  Yes, your Honor.

2      THE COURT:  Have you told him everything you know

3  about this case?

4      THE DEFENDANT:  Yes, your Honor.

11:11:28   5      THE COURT:  Are you satisfied with the advice and

6  efforts of ███████ on your behalf?

7      THE DEFENDANT:  Very satisfied, your Honor.

8      THE COURT:  Okay.

9      Then as I already told you in my review of this plea

11:11:43  10  agreement, which we're going to be talking about, and for the

11  record, it is a 27-page plea agreement that controls your plea

12  in this case, not only the pending case here, but also the

13  case that was transferred from Milwaukee.

14      You intend to enter a voluntary plea of guilty to

11:12:06  15  Count 1 of the superseding indictment which charges the

16  offense of conspiring to knowingly and intentionally possess

17  with intent to distribute more than 5 kilograms of cocaine.

18      Do you understand that that's what you're pleading

19  guilty to?

11:12:25  20      THE DEFENDANT:  Yes, your Honor.

21      THE COURT:  Then I won't go through all the facts

22  right now.  We will do that later.  But what I need you to

23  know for now is that these are the penalties that could apply

24  to pleading guilty to that charge.

1:12:41  25      First of all, the maximum sentence for this charge is

1    a sentence, because of the quantity of drugs involved in this

2    case, a maximum sentence of life imprisonment, a statutory

3    mandatory minimum sentence of 10 years, and I cannot sentence

4    you to a term of probation for this offense.

5          There is a maximum fine of $4 million.  And then

6    after whatever sentence I do impose pursuant to this plea

7    agreement, I can place you on what's called supervised release

8    from anywhere from five years to the rest of the years of your

9    life.  And while you're on supervised release, which is just

10   what it sounds like, you're not in custody, but your behavior

11   is monitored, and if you commit any violations of your

12   supervised release, you could be reincarcerated during that

13   period of time.

14          Do you understand that?

15          THE DEFENDANT:  Yes, I do.

16          THE COURT:  In addition to any fine, I'm going to be

17   required to assess you $100 that's due and payable to the

18   court.

19          Do you understand that?

20          THE DEFENDANT:  Yes, I do, your Honor.

21          THE COURT:  Now, your case is also affected to a

22   certain degree by what are called the advisory sentencing

23   guidelines.  The advisory sentencing guidelines, I'm sure as

24   ▉▉▉▉▉▉▉ has explained to you, are a series of federal laws

25   that I look at in the first instance to determine a potential

Case: 1:09-cr-00383 Document #: 615 Filed: 07/23/18 Page 13 of 33 PageID #:4746
SEALED PROCEEDINGS - PURSUANT TO COURT ORDER

12

1    sentence for you.  And these laws in your case would look at

2    the type of drugs involved here, and it's indicated in this

3    plea agreement that this is an offense involving more than

4    150 kilograms of cocaine, more than 30 kilograms of heroin,

5    and then we look at your role in this offense, and then you

6    are entitled to decreases because of your pleading guilty.

7        Then after looking at all that, we look at any prior

8    criminal history you have, and it's anticipated in this plea

9    agreement at Page 13 that you have no criminal history points,

10   so you're the lowest Criminal History Category.

11       In terms of an anticipated advisory sentencing

12   guideline range, when you look at all these things, it's

13   anticipated that your advisory sentencing guideline range

14   would be life imprisonment, in addition to any supervised

15   release and any fine that the Court could impose because your

16   anticipated offense level is 47 with a Criminal History

17   Category of a Roman numeral I.  And as I said before, you're

18   subject to a mandatory minimum sentence of 10 years.

19       Now, in this plea agreement, importantly at

20   Paragraph 12, Page 15 of this plea agreement, you're agreeing

21   to fully and truthfully cooperate in any manner in which

22   you're called upon to cooperate with a representative of the

23   United States Attorney's Office for the Northern District of

24   Illinois.  This cooperation can include pretrial preparation,

25   investigation, as well as testimony at any criminal, civil or

SEALED PROCEEDINGS - PURSUANT TO COURT ORDER

13

1   administrative proceeding, and you're agreeing to postpone

2   your sentencing until the conclusion of this entire case.

3           And the agreement with regard to sentencing is at the

4   time of sentencing, the government will make known to me the

5   extent of your cooperation; and if they believe, if the

6   government believes you have provided full and truthful

7   cooperation as required by this agreement, then the government

8   will make a motion pursuant to the advisory sentencing

9   guidelines and federal law which will allow me to depart from

10  the low end of the applicable guideline range or the statutory

11  minimum sentence, whichever is higher, and to impose a

12  sentence within the range agreed to by the parties.

13          And the parties have agreed that the Court will

14  impose a sentence of imprisonment of no less than 10 years and

15  no more than 16 years.  So that would be a range that I would

16  then set the sentence, anywhere from 10 to 16 years.

17          Now, once your case is ready for sentencing, with

18  this type of an agreement, my options are as follows:  My

19  option would be to accept this plea agreement and to sentence

20  you somewhere between 10 to 16 years, or if I thought that

21  that was either too high a sentence or too low a sentence, the

22  16-year cap, if you will, then I would request you to

23  negotiate a new plea agreement with _____ and the

24  government, and your guilty plea would become a nullity, and

25  we would restart your case.

SEALED PROCEEDINGS - PURSUANT TO COURT ORDER

14

1      But I want you to know that if I accept this plea

2 agreement and I determine that a sentence within 10 to

3 16 years is appropriate, then your plea agreement is fully

4 binding, and it will be very difficult to take this back later

11:18:54   5 on if you change your mind about this potential outcome.

6      Do you understand what I'm saying?

7      THE DEFENDANT:  Yes, I do, your Honor.

8      THE COURT:  Now, has anyone forced you in any way to

9 plead guilty?

11:19:08   10      THE DEFENDANT:  No, your Honor.

11      THE COURT:  Has anyone threatened you in any way to

12 plead guilty?

13      THE DEFENDANT:  No, your Honor.

14      THE COURT:  And you understand that if I accept this

11:19:15   15 plea agreement, then I will be sentencing you after you've

16 fully cooperated and, if the government believes you've

17 truthfully cooperated, to a sentence of between 10 and

18 16 years.

19      Do you understand that?

11:19:31   20      THE DEFENDANT:  Yes, your Honor.

21      THE COURT:  Now, you're also agreeing at Page 17,

22 Paragraph 18 of this plea agreement, that you're going to be

23 liable for a forfeiture of 938,400 -- well, that's even more

24 than that.  938,415,000, right?

1:19:54   25      MR. SHAKESHAFT:  Actually not, your Honor.

1  THE COURT:  Okay.  Tell me.

2  MR. SHAKESHAFT:  That -- the $938 million figure is

3  the forfeiture allegation.

4  THE COURT:  Okay.

5  MR. SHAKESHAFT:  The way this is structured is that

6  prior to sentencing, the defendant is agreeing to a forfeiture

7  amount of a particular fund that --

8  THE COURT:  Okay.

9  MR. SHAKESHAFT:  -- as of --

10  THE COURT:  That's the ███ Client Fund?

11  MR. SHAKESHAFT:  The ███ Client Fund.

12  THE COURT:  Okay.

13  MR. SHAKESHAFT:  That amount plus certain vehicles

14  and real property.  Colloquially, what I would say is this is

15  structured such that the defendant is agreeing to a forfeiture

16  figure of all assets of which the government is familiar --

17  THE COURT:  Okay.

18  MR. SHAKESHAFT: -- and of which the defendant has

19  told us, but at the end of this, it is not expected that there

20  will be some enormous forfeiture judgment of hundreds of

21  millions of dollars hanging over the defendant's head.

22  So that's the way this agreement is structured.

23  THE COURT:  Okay.

24  MR. SHAKESHAFT:  He's agreeing to the preliminary

25  order of forfeiture that will include the cash and assets that

1  are listed in the plea agreement.

2         THE COURT:  Okay.

3         So that would include then $81,500 seized from

4  Individual A on September 1st, 2010?

11:21:02  5         MR. SHAKESHAFT:  Correct, and the remainder at

6  Page 17 to 18 of --

7         THE COURT:  Okay.

8         MR. SHAKESHAFT:  -- the assets and cash.

9         THE COURT:  Got it.

11:21:08  10         MR. SHAKESHAFT:  Including the fund referenced in

11  Paragraph 19.

12         THE COURT:  That also includes -- I'm going to go

13  through this -- $10,000 used as a down payment on a vacant

14  lot, and then the principal balance of a ███████████

11:21:23  15  Client Fund that is an account that right now has a balance of

16  $3,861,542.24; is that right?

17         MR. SHAKESHAFT:  That is my understanding from the

18  bank as of August 7th.  They calculate accrued interest every

19  30 days.  So presumably by the time we get to sentencing, that

11:21:50  20  will be greater than that because it is accruing interest, but

21  it's in the ballpark of --

22         THE COURT:  Right.

23         MR. SHAKESHAFT:  -- 3.8 million.

24         THE COURT:  Except from that account, a total of

1:22:03  25  $300,000 is going to be withheld from a forfeiture, and that's

Case: 1:09-cr-00383 Document #: 615 Filed: 07/23/18 Page 18 of 33 PageID #:4751
SEALED PROCEEDINGS - PURSUANT TO COURT ORDER

17

1  going to be distributed between Mr. Flores's family and his

2  brother's family.

3      MR. SHAKESHAFT:  Yes, that's correct, your Honor.

4  The purpose of that is for security purposes to allow them --

11:22:22  5      THE COURT:  Okay.

6      MR. SHAKESHAFT:  So the calculation of that fund will

7  be as of the date of disbursement, whatever the total fund is

8  less that $300,000, with the $300,000 going to the families,

9  and the balance of the fund being remitted to the U.S. Marshal

11:22:39  10  Service or to the Clerk's Office, however it's ordered.

11      THE COURT:  Okay.

12      And then there's a forfeiture of a 2008 Land Rover

13  seized from Individual A.

14      MR. SHAKESHAFT:  Correct.

11:22:51  15      THE COURT:  A -- there's going to be an

16  administrative forfeiture of a 2009 Bentley Continental Flying

17  Spur, which I take it that's an airplane?

18      MR. SHAKESHAFT:  No, that's an automobile.

19      THE COURT:  That's an automobile.  Okay.  Got it

11:23:06  20  wrong.

21      2003 Lexus GS 470 seized from Individual C.

22      $406,137 worth of assorted jewelry seized from

23  Mr. Flores, and that was administratively forfeited by the DEA

24  on August 25th, 2004.

1:23:34  25      A 2003 Lexus SUV seized from Individual D.

1    And then there's $8,850 worth of assorted electronic

2   equipment seized from Individual E.

3    $15,000 in assorted electronic equipment seized from

4   Individual F.

11:23:59    5    $6,425 in assorted electrical equipment seized from

6   Mr. Flores administratively forfeited by the DEA on June 24,

7   2004.

8    $6,132 seized from Individual E.

9    $3,419 seized from Individual D.

11:24:22   10    $4,995 seized from Individual F.

11    So you understand, Mr. Flores, you're basically

12   forfeiting all of the property and automobiles and money that

13   I've indicated.  And with regard to the ██████ fund, $300,000

14   is going to be distributed to your family and the family of

11:24:50   15   your brother.

16    THE DEFENDANT:  Yes, your Honor.

17    THE COURT:  Okay.  Do you have any questions about

18   that?

19    THE DEFENDANT:  No, your Honor.

11:24:57   20    THE COURT:  Is your decision to plead guilty entirely

21   voluntary on your part?

22    THE DEFENDANT:  Yes, your Honor.

23    THE COURT:  I'm going to show you the last page of

24   this plea agreement, which is Page 27.  We're just going to

1:25:13   25   move it a little bit closer to you.

SEALED PROCEEDINGS - PURSUANT TO COURT ORDER

19

1         If you would do that, Gladys.

2         And my question is going to be is that your signature

3    on Page 27?

4         THE DEFENDANT:  Yes, your Honor.

11:25:24  5         THE COURT:  And did you go over this document or a

6    copy of it with ███████ before signing it?

7         THE DEFENDANT:  Yes, your Honor.

8         THE COURT:  Do you have any questions, Mr. Flores, as

9    to any aspect of this plea agreement that I might be able to

11:25:37  10    answer for you?

11         THE DEFENDANT:  No, your Honor.

12         THE COURT:  And you understand that there can be no

13    binding promises that are not contained in this written

14    27-page plea agreement that could be effective at all.

11:25:54  15         Do you understand that?

16         THE DEFENDANT:  I understand, your Honor.

17         THE COURT:  That this plea agreement basically is it

18    in terms of outlining what the government is agreeing to, what

19    you're agreeing to, and that this plea agreement is what's

11:26:07  20    governing both your plea as well as your potential sentence.

21         Do you understand that?

22         THE DEFENDANT:  Yes, your Honor.

23         THE COURT:  And you understand any predictions as to

24    what your sentence will be are just that.  They're just

1:26:21  25    predictions.  They can't be binding promises because, as I sit

SEALED PROCEEDINGS - PURSUANT TO COURT ORDER

20

1    here right now as the person who's going to be responsible for

2    sentencing you, I have no idea what your sentence will be

3    because I simply don't know enough about you or about this

4    entire case just yet.

5            Do you understand that?

6            THE DEFENDANT:  I understand, your Honor.

7            THE COURT:  Then unless you have any questions about

8    the potential penalty that could apply in this case, I'm going

9    to switch to a different topic.

10           Do you have any questions?

11           THE DEFENDANT:  No, your Honor.

12           THE COURT:  Then I'm going to switch to the topic of

13   your trial rights, and the reason I'm going to go over this

14   with you is just to explain how your trial could have gone and

15   for you to fully understand what you're giving up because if

16   you plead guilty here this morning, Mr. Flores, you're giving

17   up all of your trial rights that I'm about to explain to you.

18           Your trial could proceed in one of two fashions:  It

19   could be a bench trial, or it could be a jury trial.  To get a

20   bench trial, that is, a trial where I decide if you're guilty,

21   if the government has proven your guilt beyond a reasonable

22   doubt, you have to request a bench trial, the government has

23   to agree to let me do a bench trial, and I also have to agree

24   to decide your case.

25           If all three parties don't agree on a bench trial,

11:26:39

11:26:54

11:27:06

11:27:24

1:27:41

Case: 1:09-cr-00383 Document #: 615 Filed: 07/23/18 Page 22 of 33 PageID #:4755
SEALED PROCEEDINGS - PURSUANT TO COURT ORDER

21

1    you don't have an absolute right to a bench trial.

2          On the other hand, you do have an absolute right to a

3    jury trial.  No one has to agree to that at all, not even me.

4          In a jury trial, we would gather citizens from

5    throughout this federal district and endeavor to find 12

6    people who could decide your case.  And the way they qualify

7    to serve as jurors in your case is I question them on their

8    ability to apply three fundamental principles to your case.

9          The first is that you're presumed to be innocent.  It

10   doesn't matter that the government has secured the charges in

11   this indictment or the case in Milwaukee against you.  You're

12   presumed to be innocent, and I would tell the jurors that.

13         Second, I would tell them that the government has the

14   burden of proving your guilt beyond a reasonable doubt and

15   that you have no burden, which gets me to the third point.

16         I would tell the prospective jurors that they

17   couldn't presume that you were guilty by your failure to

18   present a defense case, including your own testimony.  They

19   couldn't infer that you were guilty by your failure to take

20   the witness stand.

21         Now, I would question all of the prospective jurors

22   and excuse any who I thought weren't going to be fair.  And

23   then once we narrowed the pool of prospective jurors down,

24   even then after I thought the ones that were left could be

25   fair, you don't even have to accept that group of prospective

SEALED PROCEEDINGS - PURSUANT TO COURT ORDER

1    jurors because I would let you and ▮▮▮▮▮▮ excuse as many

2    as ten prospective jurors for whatever reason you saw fit, as

3    long as you didn't discriminate against any one particular

4    group of jurors.

11:29:30   5    Once the jury was selected, we then proceed with the

6    other aspects of the trial, starting with opening statements.

7    The attorneys could outline their initial positions to the

8    jury, and then once the opening statements were done, the

9    government would proceed with their evidence.

11:29:48   10    They would call witnesses, introduce exhibits.  If

11    there were any objections by ▮▮▮▮▮▮, I would rule on those

12    objections by applying the rules of evidence.  He could also

13    question the government's witnesses by cross-examining them on

14    your behalf.

11:30:09   15    Once the government rested their case, if I

16    determined there was enough evidence to proceed to a jury

17    verdict against you, I -- it is at that point that you would

18    have a right to present your defense case; but as I said

19    before, you're under no obligation and no duty to present a

11:30:30   20    defense case, but if you wanted to, I would let you use the

21    subpoena power of this court to obtain any evidence or the

22    attendance of any witnesses that might be favorable to your

23    defense.

24    Once the jury had heard all the evidence in the case,

1:30:44   25    I would then instruct them on the law that applied to the case

SEALED PROCEEDINGS - PURSUANT TO COURT ORDER

23

1   and, importantly, I would tell them that their verdict would

2   have to be unanimous.  Before they could find you not guilty

3   or guilty, all 12 jurors would have to agree.

4           Second of all, I would tell the jury that group

5   decisions are not appropriate, so even if you went to trial

6   with other individuals charged in this case, it isn't a

7   situation of all guilty or all not guilty.  Instead, I would

8   ask the jury to make an individualized assessment of how the

9   evidence related to your involvement in this indictment.  And

10  then only after that, they would make individual findings for

11  each defendant on trial.

12          Now, even if you went to trial and were found guilty

13  by way of a unanimous and individualized jury verdict, you

14  would have a right to appeal not only the verdict, but all the

15  rulings that I made before, during and after the trial; but if

16  you plead guilty here this morning, there's not going to be a

17  trial for you as I've described it, and all that's going to

18  happen is I will enter a judgment of guilty on Count 1

19  pursuant to your plea, and you will be waiving your trial

20  rights.

21          Now, knowing all that I've told you, Mr. Flores, is

22  it your desire to waive your trial rights in this case?

23          THE DEFENDANT:  Yes, it is, your Honor.

24          THE COURT:  Has anyone forced you in any way to waive

25  your trial rights in this case?

SEALED PROCEEDINGS - PURSUANT TO COURT ORDER

24

1 THE DEFENDANT:  No, your Honor.

2 THE COURT:  And is your decision to plead guilty

3 entirely voluntary on your part?

4 THE DEFENDANT:  Yes, your Honor.

11:32:30 5 THE COURT:  Now I'm going to ask the government's

6 prosecutor, Mr. Shakeshaft, to summarize what the evidence

7 would be against you on Count 1.  Pay close attention to the

8 summary because at the end of the summary, I will be asking

9 you if you agree with it or if you wish to disagree with any

11:32:47 10 part of it.

11 You can proceed.

12 MR. SHAKESHAFT:  Thank you, your Honor.

13 The factual basis for both the plea and what the

14 government would prove at trial is included in the plea

11:32:56 15 agreement from Pages 2 to 7.

16 THE COURT:  Okay.

17 MR. SHAKESHAFT:  But in summary, your Honor, the

18 evidence in this case, if it went to trial, would show that

19 beginning no later than in or about May of 2005 and continuing

11:33:15 20 until at least on or about December 1st of 2008, in Chicago in

21 this district and elsewhere, Defendant Pedro Flores conspired

22 with a number of people, including Joaquin Guzman-Loera, also

23 known as "El Chapo," also known as "Chapo Guzman;" Ismael

24 Zambada-Garcia, also known as "El Mayo" or "Mayo Zambada;"

1:33:41 25 Jesus Vicente Zambada-Niebla, also known as "Vicente Zambada,"

SEALED PROCEEDINGS - PURSUANT TO COURT ORDER

25

1    "Mayito," and "30;" Alfredo Guzman-Salazar, who's also known

2    as "Alfredillo;" Alfredo Vasquez-Hernandez, also known as

3    "Alfredo Compadre;" Juan Guzman-Rocha, also known as

4    "Juancho;" German, spelled with a G, Olivares; Felipe

11:34:07   5    Cabrera-Sarabia; Tomas Arevalo-Renteria; and defendant's

6    brother Margarito Flores, and with others who are known and

7    unknown to knowingly and intentionally possess with the intent

8    to distribute and to distribute controlled substances; namely,

9    five kilograms or more of substances containing cocaine and

11:34:24   10   one kilogram or more of substances containing heroin.

11          Specifically, and I will summarize here, your Honor,

12   the defendant, Pedro Flores, Margarito Flores and their

13   brothers operated a wholesale cocaine and heroin distribution

14   organization in Chicago and elsewhere; that Pedro Flores and

11:34:43   15   his brother Margarito obtained substantial quantities of

16   cocaine and at times heroin from a drug-trafficking

17   organization in Mexico under the control of Chapo Guzman and

18   Mayo Zambada known at times as either The Federation, the

19   Sinaloa Cartel or the Sinaloa Federation, as well as from

11:35:01   20   other sources of supply, including from members and associates

21   of a drug-trafficking organization known as the Beltran-Leyva

22   organization.

23          At the direction of defendant Pedro Flores and his

24   brother, individuals referred to in the plea agreement as the

1:35:17   25   Flores crew took receipt of multi-ton quantities of cocaine

SEALED PROCEEDINGS - PURSUANT TO COURT ORDER

26

1   imported into the United States from Mexico usually in
2   shipments of hundreds of kilograms at a time, as well as
3   multi-kilogram quantities of heroin that were received in
4   Chicago and elsewhere.

11:35:34   5       The cocaine and heroin was provided to the defendant
6   Pedro Flores, his brother, and the Flores crew on consignment
7   without payment at the time of delivery.  Essentially, it was
8   fronted in wholesale quantities.  Payment was subsequently
9   made by defendant Pedro Flores, his brother, and the Flores
11:35:52   10  crew and others on behalf, after some or all of the cocaine or
11  heroin had been sold to customers in Chicago and elsewhere.

12      Pedro Flores is aware that Chapo Guzman, Mayo Zambada
13  and factions of the Sinaloa Cartel controlled by them
14  coordinated their narcotics activities to import multi-ton
11:36:17   15  quantities of cocaine from Central and South American
16  countries, including Colombia and Panama, to the interior of
17  Mexico using a variety of means including, but not limited to,
18  Boeing 747 cargo aircraft, private aircraft, submarines and
19  other submersible and semi-submersible vessels, container
11:36:35   20  ships, go-fast boats, fishing vessels, buses, rail cars,
21  tractor-trailers and automobiles.

22      At certain times during the conspiracy, the defendant
23  and the Flores crew controlled by him and his brother obtained
24  and distributed from Chicago and elsewhere on average 1,500 to
1:36:55   25  2,000 kilograms of cocaine per month and received some of that

1    quantity and at certain times all of that quantity from

2    factions of the Sinaloa Cartel led by Chapo Guzman and Mayo

3    Zambada.

4              For some shipments of narcotics from Chapo Guzman and

5    Mayo Zambada and the factions of the cartel controlled by

6    them, the Flores brothers and the Flores crew received the

7    cocaine and heroin directly in the Chicago area; for other

8    shipments, the defendant, his brother and the crew they

9    controlled received the cocaine in Chicago and elsewhere,

10   where truck drivers for the Flores brothers transported the

11   cocaine and heroin to Chicago.

12             In summary, additionally, the defendant and other

13   members of his -- his brother and his crew used warehouses in

14   the Chicago area to store both the drugs and cash that were

15   distributed from Chicago.  Those -- those drugs were

16   subsequently distributed to customers in, among other places,

17   Detroit, Michigan; Cincinnati, Ohio; Philadelphia,

18   Pennsylvania; Washington, D.C.; New York, New York; Vancouver,

19   British Columbia; Columbus, Ohio; and elsewhere.

20             Wholesale customers in those areas further

21   distributed cocaine and heroin to other areas, including

22   Milwaukee, Wisconsin.

23             Page 5 of the plea agreement describes some of the

24   activities that the Flores crew engaged in, including

25   collecting and picking up payments from customers, delivering

SEALED PROCEEDINGS - PURSUANT TO COURT ORDER

28

1    money to various storage locations, counting and packaging

2    money, and reporting cash receipts to the defendant Pedro

3    Flores and his brother Margarito Flores.

4             Also at the direction of Pedro Flores, the defendant,

11:38:42    5    and his brother, members of the Flores crew and other

6    co-conspirators counted cash narcotics proceeds and packaged

7    them so they could be delivered to couriers who would

8    transport them back to Mexico.

9             Members of the Flores crew delivered and caused to be

11:38:56    10   delivered millions of dollars in cash narcotics proceeds to

11   other co-conspirators, including members of the Sinaloa

12   Cartel, who smuggled the proceeds back to Mexico in bulk.

13            The defendant, Pedro Flores, and Margarito Flores

14   were aware that members and associates of the Sinaloa Cartel

11:39:16    15   and other sources of supply transported and caused the

16   transportation of large quantities of cash, narcotics proceeds

17   from locations in the United States to locations in Mexico.

18            The -- the Flores crew routinely delivered large

19   quantities of U.S. currency in bulk without differentiating

11:39:39    20   which portions of the cash narcotics proceeds were in payment

21   for cocaine and heroin obtained from particular factions of

22   the Sinaloa Cartel, one headed by Chapo Guzman, one headed by

23   Mayo Zambada.

24            As part of the drug-trafficking organization, the

1:39:55    25   defendant, his brother, and the Flores crew maintained ledgers

Case: 1:09-cr-00383 Document #: 615 Filed: 07/23/18 Page 30 of 33 PageID #:4763
SEALED PROCEEDINGS - PURSUANT TO COURT ORDER

29

1  in paper and electronic form which tracked information related

2  to their drug-trafficking activities, including, but not

3  limited to:  Amounts of narcotics received; money sent to

4  Mexican sources of supply, including the Sinaloa Cartel;

11:40:12   5  amounts of narcotics delivered to customers of the Flores

6  crew; the courier or couriers responsible for particular

7  deliveries to customers; money received from customers; and

8  payments to members of the Flores crew.

9          As part of the conspiracy, the defendant and other

11:40:28   10  members of the conspiracy used coded language to misrepresent,

11  conceal and hide the drug-trafficking activities of the

12  conspiracy.

13          And then as we've discussed previously through the

14  course of the above-described conspiracy, the evidence would

11:40:44   15  show that the defendant, his brother, and their

16  co-conspirators were responsible for approximately

17  $938,415,000 of cash narcotics proceeds in the form of bulk

18  United States currency that was transported from the United

19  States to Mexico in furtherance of the conspiracy.

11:41:03   20          The members of the conspiracy at times possessed

21  firearms as outlined on Page 7.  That, your Honor, with --

22  related to the third superseding indictment in this district

23  is what the evidence would show, and I will very briefly touch

24  upon the evidence from the Milwaukee case, your Honor, just

1:41:24   25  for the sake of completeness.

SEALED PROCEEDINGS - PURSUANT TO COURT ORDER

30

1          THE COURT:  Okay.

2          MR. SHAKESHAFT:  The evidence --

3          THE COURT:  That's covered in Paragraph 8, right?

4          MR. SHAKESHAFT:  Paragraph 8 at Pages 8 to 9, and I

11:41:34  5  will --

6          THE COURT:  You can proceed.  Don't worry.

7          MR. SHAKESHAFT:  That case, as you know, your Honor,

8  has been transferred here pursuant to Rule 20.

9          It's my understanding that the evidence in that case

11:41:42  10  would show that on or about April 17th, 2003, in the Eastern

11  District of Wisconsin, again, that the defendant, Pedro

12  Flores, and his brother knowingly and intentionally possessed

13  with intent to distribute a controlled substance; namely,

14  5 kilograms or more of cocaine; that on or about

11:42:01  15  November 18th, of 2003, the defendant and his brother also

16  possessed with intent to distribute 5 kilograms or more of

17  cocaine; and as part of the conspiracy charge that he's

18  pleading guilty to that between July 1st, 2001 and

19  February 19th of 2004 in the Eastern District of Wisconsin,

11:42:22  20  the defendant and his brothers conspired with each other and

21  with other people, known and unknown, to conduct financial

22  transactions involving the proceeds, essentially money

23  laundering.

24          Particularly in December of 2001, Pedro Flores and

1:42:38  25  Margarito Flores purchased a property in Oak Forest, Illinois;

SEALED PROCEEDINGS - PURSUANT TO COURT ORDER

31

1    that Margarito Flores was the actual owner of the property,

2    but they put the name of the property in the names of two

3    other individuals; and that in or about January 2003, Pedro

4    Flores purchased a property in Romeoville from two other

11:43:00    5    individuals using the proceeds of their drug-trafficking

6    organization to pay for those properties.

7            So it's my understanding that's what the evidence in

8    the Wisconsin case would show to which the defendant is also

9    pleading guilty here.

11:43:15    10           THE COURT:  Okay.

11           Mr. Flores, I know that's a long summary.  Do you

12    agree with it?

13           THE DEFENDANT:  Yes, I do, your Honor.

14           THE COURT:  Do you wish to disagree with any aspect

11:43:25    15    of it?

16           THE DEFENDANT:  No, your Honor.

17           THE COURT:  And did you participate in this

18    conspiracy to distribute cocaine and heroin coming from Mexico

19    with the individuals Mr. Shakeshaft has outlined here in open

11:43:42    20    court?

21           THE DEFENDANT:  Yes, your Honor.

22           THE COURT:  Then my one remaining question is what is

23    your plea to Count 1, guilty or not guilty?

24           THE DEFENDANT:  Guilty, your Honor.

1:43:50    25           THE COURT:  Since you acknowledge that you are, in

SEALED PROCEEDINGS - PURSUANT TO COURT ORDER

32

1   fact, guilty as charged in Count 1 and you've had the

2   assistance of able and experienced counsel, you voluntarily

3   waived your rights to trial, you know what the maximum

4   possible punishment is, I find that you are knowingly,

11:44:09   5   intelligently, and voluntarily pleading guilty; will enter a

6   judgment of guilty on Count 1.

7           We will hold sentencing in abeyance until the entire

8   case is concluded to allow you to fully comply with the

9   cooperation aspect of this plea agreement.

11:44:33   10           I will seal the original plea agreement and the

11   transcript of this proceeding.

12           Is there anything else we need to take care of?

13           ██████████:   Judge, I would ask that we defer

14   referral to the Probation Office until we are approaching a

11:44:48   15   sentencing date.

16           THE COURT:   I will do that, so we will defer that.

17   Thank you.

18           MR. SHAKESHAFT:   Thank you, your Honor.

19           ██████████:   Thank you.

20       (Which were all the proceedings heard.)

21                       CERTIFICATE

22       I certify that the foregoing is a correct transcript from
    the record of proceedings in the above-entitled matter.
23
    /s/Kathleen M. Fennell              July 17, 2018
24   _____      _____
    Kathleen M. Fennell                  Date
25   Official Court Reporter